**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHESTER JOHNSON, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2:12 - 100 |
| | ) | |
| vs | ) | Magistrate Judge Cynthia Reed Eddy |
| | ) | |
| TABB BICKELL, *ET AL.*, | ) | |
| | ) | |
| Respondents. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

**II.   REPORT**

Petitioner, Chester Johnson, a state prisoner incarcerated at the State Correctional Institution at Huntingdon, Pennsylvania has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in connection with his convictions for Sexual Assault, Unlawful Restraint, and Indecent Assault. For the reasons that follow, the Petition should be denied as without merit.

**A. Relevant Factual and Procedural History**

On direct appeal, the Superior Court set forth the following relevant factual history.

On October 4, 2005, at about 12:30 A.M., the victim, Debora McClintock, was walking home on Green Street, Brownsville Borough, Fayette County, Pennsylvania, after visiting with a neighbor. As she approached her home, she observed the defendant walking toward her in the opposite direction. Upon approaching the victim, the defendant grabbed her around the neck with his arm and with the other hand covered her mouth and nose. He then stated to the victim "If you try to scream, I'll snap your fucking neck." The victim was dragged backwards by defendant a short distance to a wooded area in a nearby cemetery. Upon arrival at the wooded area, the defendant pushed the victim to the ground, pulled down her shorts, pulled his pants down and engaged in vaginal intercourse with the victim.

1

Following intercourse, the defendant left the scene. When the defendant left her sight, the victim went home and reported the assault to her friend, Tara Brown. Based upon the victim's account of the incident, Jerry Mapstone accompanied the victim to the defendant's residence on Sheldon Avenue where she observed from a distance as Mapstone knocked on the door. When the defendant stepped onto the porch, the victim immediately recognized him as the perpetrator of the assault. When she confronted the defendant his response was that he had never seen her before in his life.

At the request of the Brownsville Borough Police, the victim was transported to the Brownsville Hospital where an examination was performed by Dr. Padmarao Jevaji and evidence was preserved through use of a standard rape kit. The rape kit was transported by Officer Kevin Harris to the Pennsylvania State Police Crime Laboratory in Greensburg for analysis.

Tami Kloes, a serologist with the State Police Crime Lab, identified seminal material on the vaginal swab removed from the kit. Kloes prepared the seminal material together with blood samples from both the victim and the defendant for DNA analysis. John Picciani, a DNA expert with the Crime Laboratory, conducted an analysis of the samples finding the defendant's DNA profile in all 16 areas of the seminal sample. Picciani determined based upon statistical analysis that the probability of another African American's DNA profile being included in all 16 areas was one in 970,000.

In an interview conducted by Officer Kevin Harris on October 4, 2005 at defendant's residence, defendant indicated that he had no idea who the victim was, that he had never seen her before in his life and had never touched her or had any contact with her. Defendant made a subsequent statement to Officer Harris on January 13, 2006, while he was being transported to Uniontown Hospital to obtain a sample of his blood pursuant to a search warrant. Defendant again denied having sexual contact with the victim, indicating that he had never seen her or touched her before.

At trial, the defendant took the witness stand and testified in his defense. In his trial testimony, defendant admitted to having sexual intercourse with the victim on October 4, 2005, but claimed that the sexual intercourse was consensual. He maintained that he had lied to the police because his wife was present in their home at the time of the initial interview on October 4, 2005.

ECF No. 3-2, pp. 2-4.

Following a trial by jury the defendant was found guilty of Sexual Assault, Unlawful

Restraint and Indecent Assault. The jury was unable to reach a verdict on the charge of Rape

and a mistrial as to this charge was granted upon motion of the defendant. The defendant was sentenced on the conviction for Sexual Assault, a felony of the second degree, to a term of incarceration of not less than 60 months nor more than 120 months. On the conviction for Unlawful Restraint, a misdemeanor of the first degree, the defendant was sentenced to a consecutive term of imprisonment of not less than 2-1/2 nor more than 5 years. The Court accepted the guilty verdict for Indecent Assault without further penalty being imposed.

Thereafter, defendant filed an appeal from judgment of sentence directly to the Superior Court wherein he raised the following claim.

> Whether the evidence was insufficient to find the appellant guilty of sexual assault and unlawful restraint beyond a reasonable doubt because the alleged victim consented to the sexual acts in question.

On August 27, 2007, the trial court filed its Opinion affirming Petitioner's judgment of sentence (ECF no. 13-2). On April 16, 2008, the Superior Court of Pennsylvania affirmed Petitioner's judgment of sentence (ECF no. 13-14). Petitioner did not file a petition for allowance of appeal to the Supreme Court of Pennsylvania.

On June 25, 2008, Petitioner filed a *pro se* petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. §9541, *et seq.* Thereafter, Dianne H. Zerega, Esquire, was appointed to represent Petitioner in his PCRA proceeding. On October 21, 2008, Petitioner filed an amended PCRA Petition. On October 24, 2008, an order was entered permitting counsel to withdraw her appearance and appointing Attorney Mark Mehalov to represent Petitioner.

On June 5, 2009, pursuant to defendant's request for the appointment of a psychologist for an independent evaluation, the Court appointed Adam Sedlock, licensed psychologist, for the purpose of performing a sexual predator assessment upon the defendant. By order filed August

3

11, 2009, Attorney Mark Mehalov was permitted to withdraw as counsel and Attorney Brent Peck was appointed to represent Petitioner.

A hearing on the PCRA petition was held on October 13, 2009. On April 21, 2010, Attorney Peck submitted a Turner/Finley "no merit" letter and a request to withdraw. Petitioner filed a response to the "no merit" letter on June 15, 2010. On July 21, 2010, the court filed notice pursuant to Pa. R. Crim. P. 907(1) of its intention to dismiss the PCRA petition. Appellant filed a response to the court's notice on March 16, 2011. The court thereafter granted Attorney Peck's motion to withdraw and denied PCRA relief on January 8, 2008.

Petitioner filed a *pro se* appeal wherein he raised the following claims in his Concise Statement of Matters Complained of on Appeal.

1. Trial Counsel was ineffective for permitting the retention of a jury member who was a friend of the victim's mother.

2. PCRA Counsel was ineffective for failing to properly argue Petitioner's claim about Trial Counsel's ineffectiveness for permitting a jury member who admitted she knew the mother of the victim to remain on the jury.

3. Trial Counsel was ineffective for failing to object or bring to the Honorable Court's attention at the conclusion of the the the *voir dire* that there were no minorities at all in the jury section panel.

4. PCRA Counsel, was ineffective for failing to ask Trial Counsel why he failed to object to the all-white jury panel.

5. PCRA Counsel was ineffective for failing to ask Trial Counsel why he failed to preserve the Batson Violations.

6. PCRA Counsel was ineffective for failing to ask Trial Counsel why he failed to visit or investigate the site of the alleged crime and attack.

7. PCRA Counsel rendered ineffective assistance by failing to comply with the procedural requirements of the Turner/Finley mandate.

8. The PCRA Judge erred in allowing PCRA Counsel to Withdraw.

9. The PCRA Judge erred in applying Pennsylvania Rule Of Criminal Procedure (Pa. R. Crim. P.) Rule 907.1.

ECF No. 3-2.

On October 11, 2011, the Superior Court affirmed the dismissal of the PCRA Petition (ECF No. 3-1). Petitioner did not file a petition for allowance of appeal.

Petitioner filed his Petition for a Writ of Habeas Corpus with this Court on January 27, 2012, wherein he raises the following claims.

1. Trial Counsel rendered ineffective assistance by failing to object to the all-white jury.

2. Trial Counsel rendered ineffective assistance by failing to object to the empanelling of a friend of the alleged victim's mother to remain on the jury.

3. Trial Counsel rendered ineffective assistance by failing to investigate the scene of the crime, and to obtain video tapes of a local store where the petitioner and alleged victim had been.

4. Trial Counsel rendered ineffective assistance by failing to prepare for trial, thereby never communicating with or visiting petition prior to trial.

5. Trial Counsel rendered ineffective assistance by failing to exercise a peremptory challenge to a prospective juror when specifically requested by petitioner.

6. Trial Counsel rendered ineffective assistance by failing to request and obtain copies of an evaluation completed by Megan's Law evaluators, thereby failing to challenge same.

7. Trial Counsel rendered ineffective assistance by failing to request an independent expert evaluator for the defense to use at Petitioner's Megan's Law hearing.

8. Trial Counsel rendered ineffective assistance by failing to have the preliminary hearing transcripts transcribed and/or the notes from that hearing retained.

9. Trial Counsel rendered ineffective assistance by failing to object to the *voir dire* panel as it contained no minorities.

## B. Standards Governing Federal habeas Corpus Review

1. <u>Exhaustion Requirement</u>

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review. *See, e.g.*, <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989); <u>Doctor v. Walters</u>, 96 F.3d 675, 678 (3d Cir. 1996); <u>Burkett v. Love</u>, 89 F.3d 135, 137 (3d Cir. 1996). To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. <u>McCandless v. Vaughn</u>, 172 F.3d 255, 261 (3d Cir. 1999). A petitioner can "fairly present" his claim through: (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *Id*. At 260. Even if a state court refuses to consider the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address it. <u>Bond v. Fulcomer</u>, 864 F.2d 306, 309 (3d Cir.1989);

In addition, in order to exhaust his claims, a habeas corpus petitioner must "properly present" his claims to the state courts. In this regard, a petitioner must invoke "one complete round" of the applicable State's appellate review process, thereby giving the courts of that State "one full opportunity" to resolve any issues relevant to such claims. <u>O'Sullivan v. Boerckel</u>, 526

U.S. 838, 845 (1999) (holding that a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion would be considered satisfied). The petitioner has the burden of establishing that exhaustion has been satisfied. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).[1]

A petitioner shall not be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). Moreover, a federal court may deny a petitioner's claims on the merits notwithstanding a petitioner's failure to comply with the exhaustion requirement. 28 U.S.C. § 2254(b)(2).

2.      Procedural Default Doctrine

The mere fact that a petitioner can satisfy the statutory exhaustion requirement on the ground that further state procedures are unavailable does not necessarily mean that a federal court can reach the merits of his or her claims. Claims deemed to have been exhausted because of a state procedural bar are procedurally defaulted, precluding a federal court from proceeding

---

1 On May 9, 2000, the Pennsylvania Supreme Court issued In re: Exhaustion of State Remedies in Criminal and Post Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Order 218), which provides that direct criminal appellants and PCRA petitioners need not file petitions for allowance of appeal in order to exhaust all "available" state remedies for habeas corpus purposes. Order 218 applies only prospectively and it has no application to cases involving petitioners whose time for seeking discretionary review had already expired prior to May 9, 2000. Wenger v. Frank, 266 F.3d 218, 226 (3d Cir. 2001).

to address them further.  In <u>Cone v. Bell</u>, 556 U.S. 449, 129 S.Ct. 1769 (2009), the United States

Supreme Court explained:

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.  In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the States' interest in correcting their own mistakes is respected in all federal habeas cases.  When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights.  Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

<u>Cone</u>, 129 S.Ct. at 1780 (internal quotations and citations omitted).

Federal habeas corpus review is not barred every time that a state court invokes a

procedural rule to preclude its review of the federal claims asserted by a state prisoner.  A state

procedural rule can preclude federal habeas corpus review only if it is "firmly established" and

"consistently and regularly applied" by the State's courts.  <u>Kindler v. Horn</u>, 542 F.3d 70, 78 (3d

Cir. 2009).  Specifically, the state rule must speak in unmistakable terms, and the state courts'

refusal to review a petitioner's claim must be consistent with decisions in similar cases.  <u>Id</u>. at

79.  An "occasional act of grace by a state court in excusing or disregarding a state procedural

rule does not render the rule inadequate."  <u>Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997)</u>

(quoting <u>Amos v. Scott</u>, 61 F.3d 333, 342 (5th Cir. 1995)).  A state rule is adequate to preclude

federal habeas corpus review if it is applied by state courts in "the vast majority of cases."

<u>Dugger v. Adams</u>, 489 U.S. 401, 410, n. 6 (1989).

Moreover, violations of a state's procedural rules may constitute an independent and

adequate state ground sufficient to invoke the procedural default doctrine even where no state

court explicitly has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996). A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

3.      Standard of Review for Exhausted (but not Procedurally Defaulted) Claims

In describing the role of federal habeas corpus proceedings, the Supreme Court of the United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d).

"Clearly established Federal law" should be determined as of the date of the relevant state-court decision and is limited to the record that was before the state court that adjudicated the claim on the merits. Greene v. Fisher, ___ U.S. ___, 132 S.Ct. 38 (2011); Cullen v. Pinholster, 563 U.S. ——, 131 S.Ct. 1388, 1398 (2011). A state-court decision is "contrary to" clearly established federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Jamison v. Klem, 544 F.3d 266, 274 (3d Cir. 2008). The state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court, Williams, 529 U.S. at 405, although district and appellate federal court decisions evaluating Supreme Court precedent may amplify such precedent, Hardcastle v. Horn, 368 F.3d 246, 256 n. 3 (3d Cir. 2004) (citing Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999)). The state court is not required to cite or even have an awareness of governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8, (2002); Jamison, 544 F.3d at 274-75. Few state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision 'involves

an unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Williams, 529 U.S. at 407. A showing of clear error is not sufficient. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). Nor is habeas relief available merely because the state court applied federal law erroneously or incorrectly. Thomas v. Varner, 428 F.3d 491, 497 (3d Cir. 2005); Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. ——, ——,131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Harrington, 131 S. Ct. at 786–87.

The Supreme Court repeatedly has reiterated the deference that the federal courts must accord to state court decisions. See Felkner v. Jackson, —— U.S. ——, 131 S.Ct. 1305, 1307 (2011) ("AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."); Harrington v. Richter, ___U.S.___, 131 S.Ct. 770, 786 (2011) ("We must use habeas corpus as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."); Renico v. Lett, ___ U.S. ___, 130 S.Ct. 1855, 1862 (2010) ("whether the trial

judge was right or wrong is not the pertinent question under AEDPA"); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); Lockyer v. Andrade, 538 U.S. 63, 75 (2003) ("it is not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was erroneous.").

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id.* (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

### C. Petitioner's Claim

All of Petitioner's claims assert ineffective assistance of counsel. In this regard, the Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). *See also* Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (holding that the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair and unreliable. Strickland, 466 U.S. at 689. A defendant is not entitled to relief unless he makes both showings. Id. at 687. Moreover, "[a] court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." Id. at 694. The Strickland standard applies equally to appellate counsel. Smith v. Robbins, 528 U.S. 259, 285 (2002). Pennsylvania applies the same test for ineffective assistance of counsel as the Strickland test used in federal courts. Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000).

With regard to the first criterion, counsel's effectiveness is measured objectively considering all the circumstances. Strickland, 466 U.S. at 687-88. In evaluating counsel's performance, the Court must "indulge a strong presumption" that counsel's challenged actions might be considered sound strategy under the circumstances. Id. at 689. "Strickland and its progeny make clear that counsel's strategic choices will not be second guessed by post hoc determinations that a different trial strategy would have fared better." Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 466 U.S. at 689). The relevant inquiry is not

whether counsel was prudent, appropriate, or perfect; rather, the focus is simply to ensure that Petitioner received a fundamentally fair trial.

With respect to the second criterion, to establish prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Prejudice must be evaluated in light of the "totality of the evidence presented at trial" and a verdict only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Rolan, 445 F.3d at 982 (quoting United States v. Gray, 878 F.2d 702, 712 (1989)).

In analyzing Petitioner's claims under the two-part test announced in Strickland, this Court must apply the standards set forth in section 2254(e) concerning the presumption of correctness applicable to state court factual findings. The question of effectiveness of counsel under Strickland is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations. Berryman, 100 F.3d 1089, 1095 (3d Cir. 1996). In this regard, a state court's finding that counsel had a trial strategy is a finding of fact to which the presumption applies. *Id.* Likewise, a state court's determination that a decision was a tactical one is a question of fact. *Id.*

The Supreme Court recently reiterated the difficulty of prevailing on an ineffectiveness claim on habeas review.

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that

the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

<u>Harrington v. Richter</u>, __ U.S. __, 131 S.Ct. 770, 785 (2011) (internal quotations and citations omitted). The Court further instructed:

> Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under §2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington</u>, 131 S.Ct. at 788 (internal quotations and citations omitted).

1. <u>Jury composition</u>

Petitioner's first claim is that his trial counsel rendered ineffective assistance by failing to object to the all-white composition of the jury when Petitioner is black. In <u>Batson v. Kentucky</u>, 476 U.S. at 79, 85 (1986); the Supreme Court determined that racial discrimination in jury selection offends the Equal Protection Clause. Specifically, the Court held that the Equal Protection Clause forbid the prosecution from engaging in purposeful discrimination on the basis

of race in exercising peremptory challenges. In <u>Batson</u>, the Supreme Court set forth a three-step analysis for a trial courts' constitutional review of peremptory challenges. First, the trial court must determine whether the defendant has made a *prima facie* showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. <u>Batson</u>, 476 U.S. at 97–98. In order to preserve a <u>Batson</u> claim, the defendant must raise an objection at trial to the prosecutor's use of peremptory challenges. *See* <u>Clausell v. Sherrer</u>, 594 F.3d 191, 194–95 (3d Cir. 2010) ("As an initial matter, we can dispose of Clausell's substantive <u>Batson</u> claim because in failing to raise an objection at trial to the prosecutor's use of challenges, Clausell forfeited his right to raise a <u>Batson</u> claim on appeal"); <u>Lewis v. Horn</u>, 581 F.3d 92, 102 (3d Cir. 2009) ("[T]he existence of a timely objection to the user of peremptory strikes is not merely a matter of state procedural law; instead, a timely objection is required to preserve a claimed <u>Batson</u> violation for appeal and failing to do so will result in forfeiture of the claim") (citation and internal quotation marks omitted); <u>Abu–Jamal v. Horn</u>, 520 F.3d 272, 283–84 (3d Cir. 2008) ("Abu–Jamal has forfeited his <u>Batson</u> claim by failing to make a timely objection [at trial]").

Establishment of a *prima facie* case requires the defendant to show that the totality of the relevant facts gives rise to an inference of discriminatory purpose. <u>Johnson v. California</u>, 545 U.S. 162, 168 (2005) (quoting <u>Batson</u>, 476 U.S. at 93–94). To make out a *prima facie* claim, the defendant may proffer evidence that the government exercised a pattern of strikes against certain jurors included in the particular venire, which might give rise to an inference of discrimination. <u>Batson</u>, 476 U.S. at 97. In addition, the prosecutor's questions and statements during *voir dire*

examination and in exercising his challenges may support or refute an inference of discriminatory purpose. However, a petitioner's bald assertion of prejudice does not provide sufficient information to establish a *prima facie* case of racial discrimination in the exercise of peremptory strikes. <u>Lewis</u>, 581 F.3d at104. *Accord* <u>Williams v. Beard</u>, 637 F.3d 195, 214–15 (3d Cir. 2011) ("When the record does not illuminate the [racial] composition of the venire, there may be insufficient evidence with which to mount a successful collateral attack.").

The government's burden of production at step two is relatively low. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. <u>Purkett v. Elem</u>, 514 U.S. 765, 768 (1995) (per curiam) (citing and quoting <u>Hernandez v. New York</u>, 500 U.S. 352, 360 (1991)). At step three of the <u>Batson</u> analysis, the petitioner must show that it is more likely than not that the prosecutor struck at least one juror because of race. <u>Bond v. Beard</u>, 539 F.3d at 256, 264 (3d Cir. 2008). To determine whether the petitioner has carried his or her burden, the court must evaluate all evidence introduced by each side (including all evidence introduced in the first and second steps) that tends to show that race was or was not the real reason for each strike. <u>Riley v. Taylor</u>, 277 F.3d 261, 286 (3d Cir. 2001) (*en banc*)); *see also* <u>Snyder v. Louisiana</u>, 552 U.S. 472, 478 (2008) (explaining that all of the circumstances that bear upon the issue of racial animosity must be consulted). Step three ultimately focuses upon the prosecutor's subjective motivation, which ideally includes an assessment of the prosecutor's credibility. *Id*. at 477 (finding that the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenges).

Petitioner raised this claim in his PCRA proceeding where the Superior Court held as follows.

> In the second issue raised in Appellant's first question, his <u>Batson</u> claim, he alleges the following:

> [Attorney] Schaffer . . . failed to object . . . at the conclusion of the *voir dire* that there were no minorit[y jurors] at all in the jury selection panel and it caused [A]ppellant to be highly prejudice[d] because [A]ppellant is [a] black [A]merican [and the] entire jury selection panel [was] all white [A]merican[s] ..
> ..

(Appellant's Brief, at 12 (emphasis omitted)).  We disagree.

The standard applied to ineffective assistance of counsel claims containing a layered <u>Batson</u> challenge which was not raised at trial is well settled.

> ... [W]here no <u>Batson</u> challenge was raised during the *voir dire* process, we have held that a post-conviction petitioner is not entitled to the benefit of <u>Batson</u>'s burden-shifting formula, but instead, bears the burden in the first instance and throughout of establishing actual, purposeful discrimination by a preponderance of the evidence.  <u>Commonwealth v. Uderra</u>, 580 Pa. 492, 862 A.2d 74, 86 (2004.) (citing <u>McCrory v. Henderson</u>, 82 F.3d 1243, 1251 (2d Cir. 1996) ("Batson's burden-shifting formula makes sense when applied to an objection raised sufficiently promptly that the attorney exercising the challenges can reasonably be expected to remember the reasons for the challenges.  On the other hand, it would be altogether unreasonable to shift the burden of explanation if the objection is so tardily made that the challenging attorney cannot be reasonably expected to remember.").  Additionally, in cases involving an unpreserved claim of discrimination in jury selection, this Court has generally enforced a requirement of a full and complete record of the asserted violation.  <u>Uderra</u>, 862 A.2d at 83 (citing <u>Commonwealth v. Spence</u>, 534 Pa. 233, 627 A.2d 1176, 1182-83 (1993).  We have held that, under such circumstances, the defendant must present a record identifying the race of the venirepersons stricken by the Commonwealth, the race of prospective jurors acceptable to the Commonwealth but stricken by the defense, and the racial composition of the final jury selected.  *Id*.

<u>Commonwealth v. Ligons</u>, 971 A.2d 1125, 1142-43 (Pa. 2009) (two footnotes omitted).

Here, Appellant does not present direct evidence of purposeful discrimination, and in fact, does not make any allegation of discrimination. Appellant alleges only that (1) he "is [a] black American [and the] entire jury selection panel were all white American[s] .... "; and (2) "he is a black man and ... there were no blacks at all in his jury panel .... "  (Appellant's Brief, at 12 (emphasis omitted)).  These allegations do not satisfy the requirements of a

<u>Batson</u> challenge because they do not establish "actual, purposeful discrimination by a preponderance of the evidence." <u>Ligons</u>, *supra* at 1142. Therefore, this claim does not have arguable merit. *See* Paddy, supra at 442.

       In addition, Appellant does not provide "a full and complete record" of strikes by either the Commonwealth or the defense. <u>Ligons</u>, *supra* at 1142. The notes of testimony from jury selection does not denote which party exercised a strike for which juror, or the ethnicity of the members of the jury panel and Appellant only broadly claims that they were all white Americans. (*See* Appellant's Brief, at 12; *see also* N.T. *Voir Dire*, 11/15/06, at 30-31). "Moreover, the record does not contain any questionable remarks made during jury selection that would indicate a motive to discriminate based on race ...". <u>Ligons</u>, *supra* at 1144 (citation omitted). Hence, Appellant cannot prove <u>Batson</u> violations from the face of the available record. Accordingly, Appellant has not "overcome the presumption that counsel is effective," <u>Paddy</u>, supra at 442, and the record supports the finding of the PCRA court. *See* <u>Spotz</u>, *supra* at 259.

10/11/2011 Sup.Ct.Op. at 10-12 (ECF No. 3-1).

Petitioner has failed to show that this determination is contrary to, or an unreasonable application of, clearly established federal law. *See* <u>Lewis v. Horn</u>, 581 F.3d 92, 104 (3d Cir. 2009) (petitioner's allegations that the prosecutor "exercised eight peremptory strikes against African American potential jurors and four against white potential jurors," and that he was "tried ... by an all-white jury," failed to establish a *prima facie* <u>Batson</u> claim, where petitioner "d[id] not cite to any record support, nor d[id] he offer other support outside the record, to substantiate [his] bare allegation[s]"); <u>Abu-Jamal</u>, 520 F.3d at 291–92 & n. 18 (although record showed that prosecution used 10 out of 15 peremptory strikes to remove black venirepersons, "[t]here [was] no factual finding at any level of adjudication, nor evidence from which to determine the racial composition ... of the entire venire—facts that would permit the computation of the exclusion rate and would provide important contextual markers to evaluate the strike rate"). Thus, Petitioner's counsel could not have been ineffective in failing to raise a <u>Batson</u> claim at trial and he is not entitled to habeas corpus relief as to this claim. *Accord* <u>Clausell v. Sherrer</u> , 594 F.3d

191, 196 (3d Cir. 2010); <u>Parker v. Kerestes</u>, Civil No. 10–7262, 2011 WL 7444026, 16-17 (E.D. Pa. Sept. 30, 2011).

2.     <u>Impartial Jury</u>

Petitioner's second claim asserts that his due process rights to a fair jury were compromised when trial counsel allowed and failed to object to the empanelling of a friend of the alleged victim's mother to remain on the jury thereby denying Petitioner a fair trial. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a ... trial, by an impartial jury." The right, held applicable to the states through the Fourteenth Amendment's Due Process Clause, requires that a defendant be provided a fair trial by a panel of impartial, "indifferent" jurors whose verdict is based on the evidence developed at trial. <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961). *See also* <u>Morgan v. Illinois</u>, 504 U.S. 719, 726 (1992).

> Qualified jurors need not, however, be totally ignorant of the facts and issues involved.
>
> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

<u>Irvin</u>, 366 U.S. at 723. *See also* <u>Murphy v. Florida</u>, 421 U.S. 794, 799-800 (1975).

The constitutional requirement of impartiality is satisfied if the jury is capable and willing to decide the case solely on the evidence before it. <u>Smith v. Phillips</u>, 455 U.S. 209, 217 (1982). Unless a defendant can demonstrate otherwise, jurors are presumed to be impartial and follow their oaths to deliberate only upon the evidence adduced at trial. <u>Irvin</u>, 366 U.S. at 723. In federal habeas corpus review, the trial judge's determination of a jury's impartiality is a

finding of fact subject to special deference absent clear and convincing evidence otherwise.

Patton v. Yount, 467 U.S. 1025, 1031, 1038 (1984).

The pertinent facts to this claim were set forth by the Superior Court as follows.

Jury selection was held on November 15, 2006, during which the court conducted the *voir dire*. The court asked the jury panel if anyone knew the victim, stating, "Is there any person on this jury panel that knows or is acquainted with or related in any way to the person who is standing in the back of the Courtroom, [the victim]? If so, please raise your hand. We see no hands raised. All are in the negative." However, one juror did state, "I know the one lady with [the victim] .... I believe that's her mother." After hearing this, the court reconfirmed with the juror that she did not know and is not acquainted with the victim. The court also inquired of the entire jury panel, "Is there any person on this jury panel who knows of any reason why that person could not or should not serve as a juror in this case?" There was no response from any member of the panel. At the conclusion of its questions, the court asked the attorneys if they had "[a]nything else" and both said "[n]o". Accordingly, the court concluded *voir dire* and the attorneys each made their peremptory challenges to form the final jury panel. Once the final panel was constituted, the court asked Appellant's counsel, Thomas Schaffer, Esquire, "is the jury as it's currently empaneled satisfactory to the defense?" and he responded, "Yes, Your Honor."

. . .

The court conducted a PCRA hearing on the petition on October 13, 2009. Appellant testified at the hearing that Juror No. 260 knew the victim's mother, but was not stricken from the jury panel. He alleged that Attorney Schaffer did not move to strike the juror for cause, nor did he use a peremptory challenge to remove her, despite Appellant's protestations that he did not want her on the panel. Additionally, Appellant testified regarding the distance the victim was' dragged during the assault, stating that he had no personal knowledge regarding whether or not his attorney had visited the scene of the crimes and observed the distance.

Attorney Schaffer also testified at the PCRA hearing. He stated that Appellant raised an objection with him regarding only one juror, and it was not Juror No. 260. He testified that if Appellant had objected to Juror No. 260, then he would have made a note in his file about it.

Sup.Ct.Op. at 2, 4 (ECF No. 3-1) (internal citations omitted).

In reviewing the merits of the claim, the Superior Court made the following determination.

   .  .  .  Appellant contends that trial counsel was ineffective for failing to remove Juror No. 260 from the panel, despite Appellant's requests to do so. This argument is belied by the record.

> The test for determining whether a prospective juror should be disqualified is whether he or she is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence. This decision rests within the sound discretion of the trial court, must be based upon the juror's answers and demeanor, and will not be reversed in the absence of a palpable abuse of this discretion.

> Jurors should be disqualified for cause when they do not have the ability or willingness to eliminate the influences under which they are operating and therefore cannot render a verdict according to the evidence. Thus, [a] challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct and answers to questions.

Commonwealth v. Robinson, 864 A.2d 460, 489-90 (Pa. 2004), *cert. denied*, 546 U.S. 983 (2005) (citations, quotation marks and footnote omitted).

Here, we look to the decisions in Commonwealth v. Patterson, 412 A.2d 481 (Pa. 1980) and Commonwealth v. Carter, 282 A.2d 375 (Pa. 1971), for guidance on this issue. In Patterson, our Supreme Court held that a mistrial should not have been granted where a juror reported to the court that he recognized one of the police witnesses as someone he had seen at Mass because the juror did not know the officer's name, had never spoken to the officer, and his encounters with the officer would not influence his ability to reach a fair and impartial verdict. *See* Patterson, *supra* at 485. In Carter, the court determined that the trial court properly exercised its discretion when it decided that a juror who recognized the victim's mother did not need to be removed from the jury panel. The court held there was no abuse of discretion because the juror stated "she did not know [the victim's mother] at all and felt no more sympathy for her than she would for another mother who had lost a son." Carter, *supra* at 377.

Similarly, the record in this case reveals that Juror No. 260 stated that she knew the lady with the victim, who she "believe[d]" was the victim's mother. The juror did not elaborate on the extent of her familiarity with the person, and the person in question did not present any testimony. The PCRA court notes in its opinion that,

the victim's mother was seated at another location in the courtroom with one of the police officer's [and not with the victim]. In his investigation of [Appellant's] assertion that the juror knew the victim's mother[,] Post-Conviction counsel determined that the woman seated with the victim was in fact not her mother.

Given these facts, the association of Juror No. 260 with the person sitting with the victim does not amount to "a close relationship, familial, financial or situational, with the parties, counsel, victims, or witnesses," and therefore, does not provide a basis for disqualification. Robinson, *supra* at 489-90.

Further, Juror No. 260 stated that she did not know, and was not acquainted with, the victim. The court also inquired of the entire jury panel, "Is there any person on this jury panel who knows of any reason why that person could not or should not serve as a juror in this case?" There was no response from any member of the panel. Hence, Appellant has not shown that striking Juror No. 260 from the panel would have "offered a potential for success substantially greater than the course actually pursued[,]" Paddy, *supra* at 442, and therefore, he has not proven that counsel's actions lacked a reasonable basis. Accordingly, Appellant has not overcome the presumption that Attorney Schaffer was effective, and the court's denial of this claim is supported by the record. Appellant's first issue would not merit relief.

Sup.Ct.Op. at 8-10 (ECF No. 3-1) (some internal citations omitted).

The record in this case does not establish that Petitioner's constitutional right to an impartial jury was denied. During *voir dire*, the Court inquired whether anyone on the jury panel knew or was acquainted with or related in any way to the alleged victim, Debra McClintock. No juror answered in the affirmative. At a subsequent time during *voir dire*, Juror Linda Stacoviak, badge 260, raised her hand and upon inquiry by the Court the juror indicated "I know the one lady with her but I can't really see the other lady without my glasses." Since there were a number of women seated in the back of the courtroom near the victim, the Court had Juror 260 step out of the jury box to take a closer look at the alleged victim. The District Attorney spoke up and indicated that he believed that the other woman was her mother. In point of fact the victim's mother was seated at another location in the courtroom with one of the police officers. Thus, the woman seated with the victim was in fact not her mother. Upon taking a closer look at

the alleged victim, Juror Stacoviak indicated that she did not know nor was she acquainted at all with the alleged victim, Debora McClintock.

Petitioner offers no evidence to rebut the presumption that juror McClintock followed her oath and deliberated only upon the evidence adduced at trial. Thus, the Pennsylvania Superior Court decision rejecting this assignment of error was neither contrary to nor an unreasonable application of federal law based on the facts presented and Petitioner is not entitled to habeas corpus relief on this claim. *Accord* Mason v. Brunsman, Civil No. 1:07-1020, 2009 WL 2169035 (S.D. Ohio July 16, 2009) (no constitutional error in seating a juror who was an acquaintance of a relative of the victim's mother). *See also* Government of Virgin Islands v. Bodle, 427 F.2d 532, 534 (3d Cir. 1970) (in rape prosecution, presence on jury of juror who had had sister who had been victim of forcible rape and murder did not create situation so fundamentally unfair as to constitute denial of due process of law or Sixth Amendment right to impartial jury).

3.    Failure to investigate crime scene and to obtain video evidence

Petitioner next claims that his counsel failed to investigate the scene of the crime and to obtain video tapes of a local store where Petitioner and the victim had been. While trial counsel has a duty to make reasonable investigations, there are countless ways to provide effective assistance in any given case. Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 779 (2011) ("Rare are the situations in which the latitude counsel enjoys will be limited to any one technique or approach."). There comes a point where a defense attorney will reasonably decide that one strategy is in order, thus making other particular investigations unnecessary. Strickland, 466 U.S. 691. Thus, as a general matter, the decision not to explore certain aspects is questioned

only when counsel fails to conduct any pretrial investigation. <u>United States v. Gray</u>, 878 F.2d 702, 711 (3d Cir. 1989) (citing cases).

In evaluating the reasonableness of a defense attorney's investigation, the information provided by the defendant is very important.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

<u>Strickland</u>, 466 U.S. at 691. While strategic decisions made by an attorney after a thorough investigation of the relevant legal and factual backgrounds to a case are "virtually unchallengeable," strategic decisions made by him or her after a less thorough investigation are reasonable only to the extent that reasonable professional judgments supported the limits placed on the investigation. *Id*.

Petitioner exhausted this claim through his PCRA proceeding where the Superior Court made the following determination.

> Appellant's second claim asserts PCRA counsel was ineffective for failing to challenge trial counsel's decision not to visit the scene of the crime. Appellant specifically argues that Attorney "Peck failed to question [Attorney] Schaffer during the [PCRA hearing regarding] why trial counsel ... failed to visit or investigate the site of the alleged crime and attack." He asserts this was relevant for two reasons: first, trial counsel could have obtained a surveillance video from an A-Plus convenience store for use to impeach the victim's testimony. Second, trial counsel could have photographed or measured the distance the victim was dragged by Appellant. We disagree.

Here, Appellant has not established that he was prejudiced by Attorney Schaffer's alleged failure to visit or investigate the crime scene. Appellant's brief makes only the conclusory assertion that "he was highly prejudice[d] by his trial counsel['s] failure to visit or investigate the alleged site of the crime and attack." This bald assertion does not "satisfy a petitioner's burden to prove that counsel was ineffective." Specifically, Appellant fails to establish that the on-site visit would have likely resulted in a different outcome, and therefore, Appellant's claim of ineffective assistance of counsel does not survive the third prong of the Pierce test. Accordingly, the record supports the findings of the PCRA court, and this claim has no merit.

Moreover, Appellant's contentions regarding the importance of the video surveillance tape are contradicted by the record. He alleges that the tape would show him talking to the victim for fifteen minutes before the crimes occurred, and therefore, would contradict the following testimony:

[ATTORNEY FOR THE COMMONWEALTH:] Prior to that evening had you known Mr. Johnson?

[THE VICTIM:] No, I've never seen him before in my life.

Since Appellant's interpretation of this testimony is illogical and inconsistent with the testimony itself, this claim would have no arguable merit. Hence, Appellant's claim of ineffective assistance of trial counsel would also fail the first prong of the Pierce test, and the PCRA court's decision is supported by the record.

Further, the PCRA court found that Attorney Schaffer "did explore the distance [Appellant] allegedly dragged the victim both during cross-examination of the victim and upon his direct examination of [Appellant] and he did point out the discrepancy between the victim's testimony and that of [Appellant]." In particular, the victim testified that Appellant dragged her past seven or eight houses and into a cemetery, which she estimated to be an additional distance of the length of the courtroom, and Appellant testified that the distance in question would be equal to two football fields. Accordingly, this issue was fully addressed by Attorney Schaffer, and Appellant's claim has no arguable merit.

Sup.Ct.Op. pp. 13-15 (internal citations omitted).

Petitioner has the burden of setting forth sufficient facts to support each claim.

Moreover, Rule 2(c) of the Rules Governing Habeas Corpus Cases, 28 U.S.C. § 2254, expressly provides, in part, that the petitioner "shall set forth in summary form the facts supporting each of the grounds" specified in the petition. The Court of Appeals for the

Third Circuit specifically has held that "[a habeas petitioner] cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense. Rather, he must set forth facts to support his contention." Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991) (citing Mayberry v. Petsock, 821 F.2d 179, 187 (3d Cir. 1987) (petitioner's vague and general allegations and supporting materials fail to make sufficient showing to justify relief). *See also* Palmer v. Hendricks, 592 F.3d 386 (3d Cir. 2010); Matura v. United States, 875 F. Supp. 235, 237 (S.D.N.Y. 1995) (holding that Petitioner's bald assertion that counsel should have conducted more thorough pretrial investigation failed to overcome the presumption that counsel acted reasonably).

Petitioner must identify the specific acts or omissions of counsel that form the basis for his claim of ineffective assistance. Specifically, he has not shown any information that would have been obtained from viewing video tapes or whether such information, assuming its availability and admissibility, would have produced a different result. Petitioner must provide evidence, not mere conclusory allegations, that counsel would have found exculpatory information. *Cf.* Aldrich v. Wainwright, 777 F.2d 630, 637 (11th Cir. 1985) (speculation insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation). In the present case, Petitioner's bald assertions are inadequate to overcome the presumption that counsel acted reasonably. In addition, Petitioner has not shown that the state court's rejection of this claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based upon an unreasonable determination of the facts in light of the evidence presented.

4-8.    Claims 4-8

Claims 4, 6, 7, and 8 were presented in the No-Merit Letter (ECF No. 13-27, p. 22) filed in Petitioner's PCRA proceeding.  However, Petitioner did not present any of these claims to the Superior Court for review.  Moreover, Petitioner never presented Claim 5 to any state court for review.  Petitioner's failure to properly present these claims to the Pennsylvania Courts constitutes a procedural default.

To this end, although Petitioner raised claims 4, 6, 7, and 8 in his PCRA proceeding, he failed to present them in his Statement of Errors filed pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure.  This Rule requires an appellant to file a Concise Statement of Errors Complained of on Appeal.  The waiver of claims not sufficiently articulated in a Rule 1925(b) statement is an independent and adequate state ground that constitutes a procedural default in federal court.  *See* <u>Buck v. Colleran</u>, 115 Fed App'x 526, 528 (3d Cir. 2004) (noting that, because petitioner did not file a motion to supplement his Rule 1925(b) statement or request an enlargement of time to raise the two claims, he was partially at fault and therefore the Superior Court did not err in finding that the claims were waived for failure to comply with Rule 1925); <u>Miles v. Tomaszewski</u>, Civ. No. 04–3157, 2004 WL 2203726, at *3 (E.D. Pa. Sept.14, 2004), *approved and adopted* by 2004 WL 2457732 (E.D. Pa. Oct.27, 2004) (holding that waiver of claims not sufficiently articulated in a Rule 1925(b) statement is an independent and adequate state ground that constitutes a procedural default in federal court); <u>Konya v. Meyers</u>, Civil No. 03-4065, 2004 WL 1171730, *3 (E.D. Pa. May 24, 2004) ("due to petitioner's failure to comply with Pennsylvania's Rule 1925(b), petitioner's claims are procedurally defaulted under Pennsylvania law."); <u>Willis v. Varner</u>, Civil No. 03-1692, 2004 WL 1109780, *7 (E.D. Pa. May 13, 2004) ("The Superior Court's conclusion that Petitioner's due

process claim was waived for failure to include it in Petitioner's 1925(b) statement is based upon an adequate and independent state procedural rule.").

With respect to claim 5, Petitioner should have raised this claim in his PCRA proceeding. Petitioner would be unable to present this issue in a second PCRA as it would be considered "waived" under the PCRA. *See* 42 Pa. Cons. Stat. § 9543(b). When a petitioner would be barred under state law from raising a claim because he failed to comply with a state procedural rule, the Court of Appeals for the Third Circuit has recognized that it would be "futile" to require the petitioner to return to state court. Under that circumstance, the petitioner is technically excused from having to comply with the exhaustion requirement, but that the claim is procedurally defaulted. *See* Slutzker v. Johnson, 393 F.3d 373, 379-80 (3d Cir. 2004); Crews v. Horn, 360 F.3d 146 (3d Cir. 2004); Lines v. Larkin, 208 F.3d 153, 166 (3d Cir. 2000) ("The equitable principles governing habeas relief will not permit [the petitioner] to create a situation in which seeking state post-conviction relief is futile, and then invoke that same futility to avoid the exhaustion requirement.").

Further, the Pennsylvania federal courts universally have held that the PCRA waiver rule is an independent and adequate state law ground that precludes federal court review under the procedural default doctrine absent a showing of cause and prejudice, or a fundamental miscarriage of justice. *See, e.g.*, Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996); Neely v. Zimmerman, 858 F.2d 144, 148 (3d Cir. 1988) (citing Wainwright v. Sykes, 433 U.S. 72, 85-86 (1977)); McAndrews v. Chesney, 1998 WL 136508 (E.D. Pa. March 23, 1998) (PCRA waiver provision is an "independent and adequate" state procedural ground to support procedural default); Smith v. Vaughn, 1997 WL 338851, at *4 (E.D. Pa. June 17, 1997) (same); Diventura

v. Stepanik, 1996 WL 107852 (E.D. Pa. 1996) (same). Thus, Petitioner procedurally defaulted his fifth claim also.

As stated previously, this federal court may not review a defaulted claim unless Petitioner demonstrates cause and prejudice for his default or establishes a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). To satisfy the cause standard, a petitioner must demonstrate that some objective factor external to the defense impeded his or her efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. at 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions, not merely that the error created a "possibility of prejudice." Carrier, 477 U.S. at 494.

In claim 4, Petitioner asserts that his trial counsel rendered ineffective assistance by failing to prepare for trial, *i.e.*, failing to communicate with, or visiting him, prior to trial. As Petitioner presented a similar claim in his PCRA proceeding, it is unclear why he did not include this claim as well. Petitioner has set forth no explanation for his failure to do so. Thus, he has failed to demonstrate cause for his default. Moreover, he has failed to show prejudice. The record contains no persuasive evidence to support Petitioner's contention that his counsel was unprepared for the trial. Failure to conduct a more intensive investigation in the absence of any indication that such investigation would develop more than was already known, simply does not constitute ineffective assistance of counsel.

As noted by the PCRA Court:

> The present case is a sexual assault case where admittedly only the defendant and the victim were present at the time of the incident. On the night of the incident, the defendant made a statement to the police denying that he had sexual intercourse with the victim and stating that he had never seen the victim

before in his life. Subsequently, when the defendant was transported to Uniontown Hospital to have blood drawn pursuant to a search warrant, defendant made a second unsolicited statement to the police indicating that he had no contact with the victim, that he had never seen her before in his life.

The results of the DNA testing established that the semen recovered from the victim in the rape kit was that of the defendant. At trial, contrary to his previous statements given to the police, defendant admitted having sexual intercourse with the victim but contended that the sexual intercourse was consensual. The possibility of an intensive investigation by counsel were extremely limited by the facts of the case. There were only two witnesses to the incident, the victim and the defendant. The witnesses proposed by the defendant to counsel were persons who the defendant claims had prior sexual contact with the victim for money and/or drugs. The defendant sought to discredit the testimony of the victim by disparaging her character through the use of evidence which would indicate that she was a prostitute. Such evidence is specifically excluded by the Rape Shield Law, 18 Pa. Cons. Stat. §3104. Trial counsel discussed with the defendant the proposed testimony and explained the reason that it was not proper and admissible at trial.

A review of the trial transcript demonstrates counsel's familiarity with the facts and circumstances of the charges and his sound grasp of the issues involved. On the basis of the full record of this case, we are satisfied that the defendant has not demonstrated counsel's alleged ineffectiveness.

PCRA Op. at 12-16 (ECF No. 3-3).

In his habeas Petition, Petitioner has not demonstrated any pre-trial investigation that would have changed the outcome of his trial. Thus, he has failed to show cause and/or prejudice as to his fourth claim.

In his fifth claim he asserts ineffective assistance of counsel by failing to exercise a peremptory challenge to another juror when specifically requested by Petitioner. In his habeas Petition, it appears that Petitioner is referring to juror, Stacy Robinson, Juror 227, who indicated that she was an emergency room nurse in a trauma center in West Virginia and routinely assessed rape cases. Juror 227 was subsequently excused and replaced with an alternate juror when, prior to the closings and charge of the Court, she expressed reservations as to her ability to

follow the law as provided by the Court. PCRA Opinion, at n.4. Thus, Petitioner cannot have suffered any prejudice.

In his sixth claim, Petitioner asserts that his trial counsel rendered ineffective assistance by failing to request and obtain copies of an evaluation completed by Megan's Law evaluators, thereby failing to challenge same. Specifically, Petitioner claims that his counsel's failure to have challenged the determinations in the evaluators reports resulted in his being subject to the lifetime reporting requirements under Megan's Law when a mistrial was granted as to the Rape charge. Petitioner has set forth no justification for his failure to have included this claim in his Concise Statement of Matters Complained of on Appeal. Thus, he has not established any cause for his default. Moreover, he has failed to establish any prejudice. First, Petitioner was convicted of Sexual Assault, which is a predicate offense carrying reporting requirements under Megan's Law. Second, Petitioner has failed to point to any inaccuracy in the Report that would have resulted in a different outcome. Thus, he has failed to overcome the default as to this claim.

In his seventh claim, Petitioner asserts that his trial counsel rendered ineffective assistance of counsel by failing to request an independent expert evaluator for the defense to use at his Megan's Law hearing. Again, Petitioner has set forth no justification for his failure to have included this claim in his Concise Statement of Matters Complained of on Appeal. Thus, he has not established any cause for his default. Moreover, he has failed to establish prejudice. According to the PCRA Opinion:

> On June 5, 2009, pursuant to defendant's request for the appointment of a psychologist for an independent evaluation, an order was entered by the Court appointing Adam Sedlock, licensed psychologist, for the purpose of performing a sexual predator assessment upon the defendant.

PCRA Op. at p. 3 (ECF No. 3-3). Because Petitioner has failed to provide this Court with the results of this assessment, it is reasonable for the Court to assume that it yielded nothing

favorable to Petitioner in regards to his designation as a Sexually Violent Predator.  Nor has he submitted any other evidence in support of his bald claim that his counsel should have hired an independent expert for the defense to use at Petitioner's Megan hearing.  Thus, he has failed to overcome the default of this claim.

In his eighth claim, Petitioner asserts that his trial counsel rendered ineffective assistance by failing to have his preliminary hearing transcripts transcribed and/or have the notes from that hearing retained.  Petitioner avers that during the course of his trial, the victim made several contradictory statements to which trial counsel and the Commonwealth made references to; however, without the preliminary hearing transcripts or notes from the hearing, trial counsel could not conclusively demonstrate to the jury the full impact of the victim's contradictory statements.  In its review of this claim, the PCRA Court held the following.

> The defendant contends that Attorney Susan Harper who represented the defendant at the preliminary hearing had taken notes of the victim's testimony and that trial counsel, who had access to those notes, failed to bring to the attention of the jury that the victim's testimony contradicted her preliminary hearing testimony in that her clothing was not torn during the incident.  In her preliminary hearing notes, Attorney Harper wrote that the victim stated that the defendant had dragged her to the cemetery, wooded, she couldn't breathe, he threw her on the ground and ripped her clothes off.  Defendant contends that the victim's clothing were not torn and that Attorney Shaffer failed to point out this inconsistency to the jury.

> The victim's testimony at trial was virtually the same as that given by her at the preliminary hearing.  At trial in explaining what the defendant did, the victim testified "that's when he pushed me to the ground and he basically ripped my shorts off of me and forced him upon me."  The victim was further questioned by the District Attorney as follows:  "Q. And did he, he took your shorts off, is that correct?  A. Down far enough to do what he needed to do.  Q. Did you have underwear on?  A. Yes.  Q. And what happened to the underwear?  A. They remained on, they were pulled down with my shorts."  During cross-examination, Attorney Shaffer inquired of the victim, "Q. Is it your testimony that he tore your clothes off?  A. He pulled my shorts down.  My shirt remained on.  Q. Well you testified earlier he ripped them off. A. Yeah, basically he did.  He pulled them down.  He ripped them off.  He pulled them down far enough to do what he had to do."  On redirect the District Attorney inquired, "Q. When you used the term ripped, you don't mean that he tore it?  A. No, there's no tears in my shorts, no,

33

but he ripped them down off of me.  Q. You're using that as an expression.  A. Yes."

Additionally, the victim's shorts were admitted into evidence as Commonwealth's Exhibit #3 and without objection the shorts were sent out with the jury for their examination during deliberations.

Furthermore, it is the Court's recollection that defense counsel in his closing arguments to the jury pointed out that the victim had used the terminology that the defendant had "ripped her shorts off" and that contrary to what the victim stated the shorts were not damaged but remained intact.

The Court finds that counsel was not ineffective by failing to point out to the jury that the victim's clothing remained intact and were not damaged or torn during the incident.

PCRA Op. at 9-11 (internal citations omitted) (ECF No. 3-3).

Here again, Petitioner has failed to show cause for his default and prejudice resulting from counsel's inactions with respect to his eighth claim.

Where a petitioner cannot make a showing of "cause and prejudice," a federal court may nevertheless consider the merits of his or her unexhausted claims under circumstances in which the failure to adjudicate such claims would result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.  This exception to the procedural default doctrine is based on the principle that, in certain instances, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'"  Murray v. Carrier, 477 U.S. 478, 495 (1986) (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)).  The "prototypical example" of a miscarriage of justice is a situation in which an underlying constitutional violation has led to the conviction of an innocent defendant.  Sawyer v. Whitley, 505 U.S. 333, 340 (1992).  In that instance, the merits of a petitioner's claims can be considered notwithstanding his or her failure to raise them before the state courts.

In order to avail himself or herself of this exception to the procedural default rule, a petitioner must make a substantial showing that he or she is actually innocent of the crime for which he or she is incarcerated. <u>Schlup</u>, 513 U.S. at 324. "To be credible, such a claim requires [the] petitioner to support his [or her] allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Id.* If this requirement is satisfied, the federal court must consider "whether it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence." <u>Hubbard v. Pinchak</u>, 378 F.3d 333, 340 (3d Cir. 2004). This standard "does not merely require a showing that a reasonable doubt [as to the petitioner's guilt] exists in the light of the new evidence, but rather that no reasonable juror would have found the [petitioner] guilty." <u>Schlup</u>, 513 U.S. at 329. "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." <u>House v. Bell</u>, 547 U.S. 518, 538 (2006). While the petitioner's innocence need not be determined with "absolute certainty" at this "gateway stage," his or her burden is to demonstrate that, in light of the new evidence, it is more likely than not that *any* reasonable juror would have reasonable doubt as to his or her guilt. *Id.*

In the habeas corpus context, a federal court sits to ensure that an individual is not imprisoned in violation of the Constitution and laws of the United States, "not to correct errors of fact." <u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993). Consequently, a finding of "actual innocence" is not an independent ground for habeas corpus relief, but rather a "gateway" through which a petitioner can pass to have a federal court consider underlying claims that would otherwise be subject to procedural default. *Id.* at 404. In the absence of new evidence of the petitioner's innocence, the existence of an underlying constitutional violation provides a federal

court with no basis for adjudicating a procedurally defaulted claim. Goldblum v. Klem, 510 F.3d 204, 225-226 (3d Cir. 2007). Only after the presentation of *new* evidence may a federal court proceed to consider whether, in light of *all* relevant evidence, it is more likely than not that no reasonable juror would vote to convict the petitioner of the crime for which he or she is incarcerated. House, 547 U.S. at 537-539; Goldblum, 510 F.3d at 225-226.

Petitioner sets forth no new evidence in support of his procedurally defaulted claims. Thus, this federal court is precluded from reviewing them.

9.    Petitioner's final claim is that trial counsel rendered ineffective assistance of counsel by failing to object to the *voir dire* panel as it contained no minorities. While Petitioner presented this claim in his PCRA proceeding and raised it on appeal, neither the PCRA Court nor the Superior Court specifically addressed his claim that his jury panel, as opposed to his individual jury, had only white persons represented in it.

Petitioner submits no evidence that he was prejudiced by his counsel's actions in failing to object to an all-white jury panel. The jury's verdict in this case was substantially supported by the evidence. Moreover, the crime in this case did not have any particular racial dimensions, which would cast doubt upon a verdict returned by a racially unbalanced, unconstitutionally composed jury. Thus, Petitioner has not demonstrated that the result of the proceeding would have been different. *See* Jackson v. Herring, 42 F.3d 1350, 1362 (11th Cir. 1995) ("We would have more confidence in the verdict had it been delivered by a [ . . . ] jury with both black and white members. But having conducted a thorough review of the record, we cannot conclude there is a "reasonable probability that, but for counsel[s'] ... errors, the result of the proceeding would have been different.") (quoting Strickland, 466 U.S. at 694). Accordingly, Petitioner's

ninth claim does not warrant federal habeas corpus relief.  *Accord* <u>Gamble v. Crosby</u>, Civil No. No. 8:04-383, 2006 WL 305923, 9 (M.D. Fla. Feb. 8, 2006).

## D. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions.  Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued.  A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right.  28 U.S.C. ' 2254(c)(2).  Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability should be denied.

## III.   <u>CONCLUSION</u>

Based on the discussion above, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. ' 636(b)(1)(B) & (C)] and the Local Rules of Court, the parties shall have fourteen days from the date of the service of this Report and Recommendation to file written objections thereto.  Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response.  A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

November 26, 2012

Chester Johnson
GZ-2681
SCI Huntingdon
1100 Pike Street

Huntingdon, PA 16654-1112